ROBY *v*. STATE OF INDIANA.

[No. 27,064. Filed December 15, 1938. Rehearing denied January 20, 1939.]

*George Sands* and *W. B. Jones,* for appellant.

*Omer S. Jackson,* Attorney General, and *Glen L. Steckley,* Deputy Attorney General, for the State.

TREMAIN, J.—The appellant was charged by indictment in three counts of involuntary manslaughter, tried by a jury, and convicted upon the third count. A motion was filed to quash each count for the alleged reason that neither stated facts sufficient to constitute a

public offense, and that neither stated the offense with sufficient certainty. The motion was sustained as to the first count and overruled as to the second and third. The jury acquitted the appellant upon the second count. The third count, upon which he was convicted, omitting the formal parts, is as follows:

"That Eugene Roby . . . did then and there unlawfully, feloniously and involuntarily, without malice, express or implied, kill a human being, to-wit: one Mary VanDerVere by reason of the defendant then and there and immediately prior thereto unlawfully driving a motor vehicle, . . . in a manner which was not safe and prudent, in that the said defendant drove the said automobile at said time and place on a wet pavement while it was raining, at a rate of speed of to-wit: fifty (50) miles per hour, when the tires on said automobile, at said time and place, were worn bare and had no treads on them, and the said defendant drove the said automobile from side to side of the said highway at the rate of speed and under the conditions at said time, as aforesaid, and the said Eugene Roby did then and there unlawfully and feloniously while driving, as aforesaid, drive said automobile into and against an automobile in and on which Mary VanDerVere then and there was, and said Eugene Roby did then and there unlawfully, feloniously but involuntarily and without malice inflict a mortal wound and injury upon and in the body of said Mary VanDerVere," from which injury she died.

Section 47-520 Burns' Ind. St. 1933, §11173 Baldwin's Ind. St. 1934, is as follows:

"It shall be unlawful for any person to drive or operate a motor vehicle or motor-bicycle on any of the public highways of this state in a reckless or dangerous manner and so as to endanger the life, limb or property of any person. For the purpose of this act, the term 'reckless driving' shall be construed to mean driving on that side of the highway which is to the left of the operator; driving in and out of a line of traffic, except as provided for elsewhere in this act; driving from side to side of the

highway; driving at such an unreasonably slow rate of speed as to endanger traffic; refusing to give one-half of the highway to a driver or operator approaching from the rear at a greater speed and desiring to pass, passing or attempting to pass another vehicle from the rear while on the brow of a hill or on a curve, where vision is obstructed for a distance of less than five hundred (500) feet ahead of any vehicle desiring to pass another, or in any other manner that is not safe and prudent."

Section 47-516 Burns' Ind. St. 1933, §11169 Baldwin's Ind. St. 1934, is as follows:

"No person shall drive or operate a motor vehicle or motor-bicycle upon any public highway in this state at a speed greater or less than is reasonable or prudent, having regard to the width of the highway, the density of the traffic, the condition of the weather and the use of the highway, or so as to endanger the life or limb or injure the property of any person."

In attacking the sufficiency of the indictment, the appellant says that the allegation, "at a rate of speed of to-wit: fifty (50) miles per hour," in itself is not an allegation of unlawful speed; that, since the offense is not charged in the language of the statute, the third count violates Article 1, section 13, of the Constitution of Indiana, which provides:

"In all criminal prosecutions, the accused shall have the right . . . to demand the nature and cause of the accusation against him. . . ."

The appellant cites and relies upon *Smith* v. *State* (1917), 186 Ind. 252, 115 N. E. 943, in which the indictment alleged that the accident occurred on a highway at a place much frequented and lawfully used by large numbers of pedestrians and vehicles, and at a time when it was being so used and frequented. It charged that the defendant, under such conditions, unlawfully drove his machine over said street in a reckless and wanton manner without regard for the safety

of others, and at a high and reckless speed of 25 miles per hour. It was held that such indictment charged the defendant with gross carelessness in the operation of his automobile, and was clearly sufficient under the rule that a negligent act which shows a wanton and reckless disregard of the life and safety of others and which causes the death of another constitutes manslaughter.

Appellant also relies upon *Kimmel* v. *State* (1926), 198 Ind. 444, 154 N. E. 16. In that case one count of the affidavit charging manslaughter in the operation of an automobile alleged that the defendant unlawfully drove his car in and on a certain street intersection, failing to keep to the right of the intersection when turning to the right, and, in so doing, unlawfully, feloniously, involuntarily, and without malice struck and killed one Wright. It was held that this count was insufficient in that it failed to state any facts as to the speed at which he was driving, and the circumstances under which he drove, or the number of persons on the highway or their position therein, or the condition of the highway, whether the accident occurred before or after dark, or any circumstances which preceded or attended the collision between the car and the decedent, from which it might appear that he drove negligently or with wanton disregard for the safety of others.

Appellant also cited *Kraft* v. *State* (1930), 202 Ind. 44, 171 N. E. 1. In that case a conviction of involuntary manslaughter was upheld by this court upon an indictment, the substance of which is similar to the indictment in the case at bar. In addition to the formal parts, it was alleged that the appellant drove his car "at a speed greater than is reasonable and prudent having regard to the density of traffic, the cloudy, foggy and misty condition of the weather, the width and use of the highway aforesaid, and so as to endanger the life and limb and injure the property of another person,

to wit, Charles Pens, to wit, thirty miles an hour, and he did then and there unlawfully and feloniously, but involuntarily, while in the commission of the unlawful act of speeding as aforesaid, kill the said . . ." The count was held sufficient as against a motion to quash.

In the Smith case, *supra,* the indictment was held sufficient; that it fully described the conditions and circumstances existing at the time of the accident, and alleged facts sufficient to constitute gross carelessness. In the Kimmel case, *supra,* the indictment did not describe the circumstances under which the appellant was driving or other conditions existing at the time, and the count was held insufficient. In the case at bar appellant's counsel, in oral argument, practically conceded that the charge that "the said defendant drove the said automobile from side to side of the said highway at the rate of speed and under the conditions at said time," standing alone made the count sufficient. The other charges in the indictment, 50 miles per hour, wet pavement, and tires worn bare and without tread, add to, explain, and give significance to the main charge that the car was driven from side to side of the highway. All of these averments enable the appellant to understand, to a certainty, the nature of the charge against him. Under those conditions the indictment charges that he drove his car into and against the decedent and thereby inflicted a mortal wound from which she died. Pursuant to Article 1, section 13, of the Constitution it has been held that the accused is entitled to know the offense of which he is charged by reason of material averments in the indictment, clearly stated in direct and unmistakable terms, but with certainty only to a common intent. *Kraft* v. *State, supra.*

While the appellant admits that the third count of the affidavit may be good as against a motion to quash because of the charge that he was driving from side to

side of the highway, nevertheless, he argues that the count is drawn under the last clause of the statute, "or in any other manner that is not safe and prudent." He asserts that allegations of alleged negligence in any other manner than that recited in the statute could not form the basis of negligence to warrant a conviction of involuntary manslaughter. From this he argues that the charges, that at the time and place the pavement was wet, the speed was 50 miles per hour, and the tires on the automobile were worn bare and had no treads, do not aid the charge that he was driving from side to side of said highway; that these charges are included in the indictment under the last clause in the statute quoted above; that, since the crime of manslaughter under the statute or at common law was not and could not be based upon charges of negligence, the indictment was insufficient for uncertainty.

The appellant is in error in the two premises which he assumes: First, the count is not based wholly upon the last clause of the statute, and, second, the manslaughter statute, section 10-3405 Burns' Ind. St. 1933, §2408 Baldwin's Ind. St. 1934, is taken bodily from the common law. *Dunville* v. *State* (1919), 188 Ind. 373, 123 N. E. 689. In that case, and many others, the court recognizes the rule that all crimes in this state are statutory, and, since the Legislature adopted the common law definition of manslaughter, it intended to adopt the contents of each and every word in the act as defined at common law. If an automobile is operated at a greater speed than is reasonable or prudent, having regard to the width of the highway, the density of the traffic, the condition of the weather, and the use of the highway, or so as to endanger the life or limb or injure the property of another, he is thereby operating the automobile unlawfully and in a negligent manner, and under our decisions comes within

section 47-520 Burns, §11173 Baldwin's *supra*, defining reckless driving.

In Book 4, chapter 14, of Blackstone's Commentaries will be found a full discussion of what constitutes manslaughter at common law. It is there defined as the unlawful killing of another without malice either express or implied, and may be either voluntary or involuntary, but in the commission of some unlawful act. The following quotation is taken from the text of that authority:

". . . involuntary manslaughter, differs also from homicide excusable by misadventure in this; that misadventure always happens in consequence of a lawful act. . . . As if two persons play at sword and buckler, unless by the king's command, and one of them kills the other: this is manslaughter, because the original act was unlawful; but it is not murder, for the one had no intent to do the other any personal mischief. So where a person does an act, lawful in itself, but in an unlawful manner, and without due caution and circumspection: as when a workman flings down a stone or piece of timber into the street, and kills a man; this may be either misadventure, manslaughter, or murder, according to the circumstances under which the original act was done: if it were in a country village, where few passengers are, and he calls out to all people to have a care, it is misadventure only: but if it were in London, or other populous town, where people are continually passing, it is manslaughter, though he gives loud warning; and murder, if he knows of their passing, and gives no warning at all, for then it is malice against all mankind. And, in general, when an involuntary killing happens in consequence of an unlawful act, it will be either murder or manslaughter, according to the nature of the act which occasioned it."

Thus it will be noted that at common law the same act may constitute misadventure, manslaughter, or murder, depending upon the circumstances, place, and conditions existing at the time. The allegations of the third count, of which appellant com-

plains, are essential in advising appellant, with certainty to a common intent, of the charge against him, and afford a full description of the conditions and circumstances accompanying the unlawful act. The count sufficiently charges involuntary manslaughter. The motion to quash was correctly overruled.

The evidence introduced at the trial justified the jury in finding, under all the circumstances described, that the appellant was engaged in an unlawful act proximately causing the decedent's death. It is disclosed that he was driving north on a four-lane highway, at that time wet from a rain that was falling, at a rate of 50 miles per hour, and in and out of the line of traffic. The four-lane highway was marked by a yellow line in the center which separated the north and south traffic lanes. The appellant approached, from the rear, another car traveling north on the outside or east lane at a rate of speed of from 40 to 45 miles per hour. Before the accident occurred he passed around this car and continued driving north for a least three city blocks with his car on the yellow center line. It appears that another car farther north than the two mentioned was traveling in a north direction; that, at some distance from where the appellant passed the first car, there was a hill so the approach of a car driving to the south could not be seen. While appellant was driving on the center line with the left wheels of the automobile to the west of that line, he turned his car to the east lane, at which time his car began to skid. The eye witnesses stated that it first headed directly to the east, then it turned half-way around in the road and headed to the west lane, and thence directly south along the west lane of the road. At that time and place the decedent and others, in an automobile, approached from the north and drove south on the west lane. The appellant's car ran onto and against the left side of the car in which

decedent was riding, and knocked it from the highway. The decedent was thrown from the car and killed.

The foregoing facts fairly disclose the situation and condition existing at the time. The establishment of these facts constitutes a sufficient ground, under all of the circumstances, to warrant the court in submitting the case to a jury to determine the question of the defendant's guilt or innocence of the charge against him.

The appellant argues most earnestly that, under a charge of the nature here described and the circumstances disclosed by the evidence, it can never be known what facts may constitute the crime of manslaughter in the operation of a motor vehicle. Under the common law as well as the statute in this state, if a person causes the death of another while performing an unlawful act which proximately contributed to the death, as defined by the involuntary manslaughter statute, guilt attaches. The Legislature in Indiana apparently recognized the frequency of tragedies in connection with the operation of motor vehicles, and therefore enacted the statutes quoted above. These statutes contemplate unintentional killing or injury. If it were intentional injury, then the killing would constitute murder, independently of the statutes relating to the operation of motor vehicles. The statutes are the result of necessity growing out of the use of the many motor vehicles upon the public highways. The statute defines, in general terms, what acts in the operation of a motor vehicle constitute the crime of manslaughter. This is sufficient to form a general basis for alleging the act or acts defined by the statute, together with all the attending circumstances and conditions. It is no less a crime because different circumstances may exist at different times or places. The same is to some extent true of most of the criminal statutes.

Appellant has predicated error upon a question which the court permitted the state to propound to prospective jurors upon their *voir dire* examination. The question asked the juror what he would do if the court gave certain instructions. The appellant has failed to point out wherein he was injured by the examination. He had the opportunity to examine the prospective jurors by the same method of examination. Such examination is largely in the discretion of the trial court. The court could determine the good faith of the attorney in propounding the question and limit the examination if the circumstances seemed to warrant. So long as no abuse was committed, the question is not subject to review in this court. *Saraceno* v. *State* (1931), 202 Ind. 663, 668, 177 N. E. 436; *Epps* v. *State* (1885), 102 Ind. 539, 545, 1 N. E. 491.

At the time of the accident the appellant and another occupying the car with him sustained sufficient injury to produce unconsciousness for a short time. They were removed from their wrecked car and placed under arrest. The appellant's luggage was taken by the sheriff to his office, and, upon examination, was found to contain two bottles partially filled with intoxicating liquors and two cartons of limes. These articles were introduced in evidence over objection of appellant. The second count of the indictment, upon which appellant was acquitted, charged that he was intoxicated at the time that he drove his car onto and against the decedent. Appellant's objection was based upon the ground that the contents of the luggage were siezed without a search warrant having been first properly issued. That rule is well recognized, but it appears to be perfectly clear, under the circumstances existing in this case, that the luggage and its contents were taken as a mere incident to the lawful arrest of appellant on a charge of involuntary manslaughter. Under those circum-

stances the articles were admissible in evidence, under the second count, although obtained without a search warrant. *Pettit* v. *State* (1935), 207 Ind. 478, 188 N. E. 784.

The appellant objects to state's requested instruction No. 11, read to the jury:

"If you find from the evidence beyond a reasonable doubt that the material allegations of the second (third) count of the indictment upon which the defendant is being tried are true, and that the defendant, Eugene Roby, was grossly negligent in exposing another to personal injury by intentionally doing the acts which caused the death of Mary VanDerVere, then the gross negligence in exposing another to personal injury by intentionally doing the acts which caused the death of Mary VanDerVere constituted criminal intent on the part of the defendant."

The appellant's objection to this instruction is that the court told the jury if it found all of the material allegations of the third count to be true beyond a reasonable doubt, and in addition thereto found the appellant was grossly negligent in exposing the decedent to a personal injury, then such gross negligence constituted criminal intent; that gross negligence is not charged in the count; and that intent is not an element of involuntary manslaughter and the instruction is without issue. It is difficult to perceive how these additional burdens upon the state could be harmful to the appellant. According to the appellant's objection, the court would have said enough to the jury if it had stopped after instructing that if the jury found from the evidence, beyond a reasonable doubt, the state had proved all the material allegations of the count. But the court put a greater burden upon the state by telling the jury that the state must also prove that the defendant was grossly negligent, and that the act was intentionally committed. No harm was done to the appellant by

giving this instruction, particularly in view of the fact that the appellant says in his brief, in making objection to this instruction, that the court clearly instructed the jury upon the issue by giving defendant's instructions Nos. 3, 5, 7, 10, and 14. Instruction No. 11 is not in conflict with those given so as to mislead the jury.

The defendant tendered twenty instructions, all of which were given except Nos. 9 and 13. In addition, he requested a peremptory instruction which was refused. Enough has been said to indicate the court's view on this proposition. No error was committed in denying this instruction.

Lastly, appellant insists that his motion for a new trial, based on the ground that the verdict is not sustained by sufficient evidence and is contrary to law, should have been sustained. As pointed out above, there is evidence sufficient to warrant a conviction on the ground that the defendant drove his car from side to side of the highway in a manner that was not safe and prudent, and in a manner to constitute "reckless driving." These were questions for the jury under proper instructions. Of the twenty instructions tendered by defendant, only two were refused, and he assigns no error upon such refusal.

The appellant has not presented grounds justifying a reversal. Judgment is affirmed.